## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 19-25148-CIV-MARTINEZ/AOR

BENZO RUDNIKAS,

      Plaintiff,

v.

NOVA SOUTHEASTERN UNIVERSITY, INC.,

      Defendant.

_____ /

### <u>OMNIBUS REPORT AND RECOMMENDATION</u>

THIS CAUSE came before the Court upon the following submissions from Plaintiff Benzo Rudnikas ("Plaintiff" or "Rudnikas"):

1. "Emergency Motion for Temporary Restraining Order & Expedited Motion for Preliminary Injunction" (hereafter, "Motion for TRO and Preliminary Injunction") [D.E. 54];

2. "(1) Emergency Motion to Amend Scheduling Order (2) Motion for Default Judgment & Sanctions for Fraud on the Court (3) Motion to Disqualify Defendant's Counsel, Richard Arthur Beauchamp, Esq. & Benjamin Bean, Esq. & Motion for Referral to the Florida Bar (4) Emergency Motion for Stay of Discovery" (hereafter, "Motion to Amend") [D.E. 55];

3. "Emergency Motion to Admit Testimony in Support of Plaintiff's [Motion to Amend]" (hereafter, "Motion to Admit Testimony") [D.E. 56];

4. "Request for Judicial Notice in Support of DE # 54 and DE # 55" (hereafter, "Request for Judicial Notice") [D.E. 109]; and

5. "Motion to Invoke Judicial Estoppel & Deem Plaintiff the Prevailing Party as to All Claims in DE # 34" (hereafter, "Motion to Invoke Judicial Estoppel") [D.E. 110].

(collectively, "Motions").[1]

---

[1] Rudnikas filed the Motion for TRO and Preliminary Injunction, Motion to Amend, and Motion to Admit Testimony *pro se*. Those submissions were not properly filed as emergency motions because they were not

These matters were referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Jose E. Martinez, United States District Judge [D.E. 8]. The undersigned held an evidentiary hearing on the Motion for TRO and Preliminary Injunction, Motion to Amend, and Motion to Admit Testimony on November 5, 2020 (hereafter, "Evidentiary Hearing") [D.E. 128]. Having considered the evidence presented at the Evidentiary Hearing and having thoroughly reviewed the parties' written submissions, the undersigned respectfully recommends that Plaintiff's Motions be DENIED.

## PROCEDURAL AND FACTUAL BACKGROUND

Rudnikas, a law student, brings this action for declaratory and injunctive relief against his law school, Defendant Nova Southeastern University, Inc. (hereafter, "Defendant" or "NSU"). See Am. Compl. [D.E. 34]. Rudnikas alleges that NSU did not adequately accommodate his Attention-Deficit/Hyperactivity Disorder ("ADHD") diagnosis because it failed to provide him with sufficient additional time to complete his assignments and exams. Id. Based on those allegations, Plaintiff asserts the following claims against NSU:

- Count I: Violation of Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794); and

- Count II: Violation of Title III of the Americans with Disabilities Act ("ADA") (42 U.S.C. § 12182).

Id. at 32–40. In his prayer for relief, Rudnikas requests that the Court, *inter alia*: deem NSU's disability accommodation policies and procedures legally insufficient; enjoin NSU from continuing to enforce its inadequate disability accommodation procedures; and require that NSU allow him to retake a final exam for which he claims he was not afforded sufficient additional time to complete. Id. at 37–40.

---

rendered moot by the passing of seven days from the time they were filed. See S. D. Fla. L. R. 7.1(d)(1) ("Generally, unless a motion will become moot if not ruled on within seven (7) days, the motion should not be filed as an emergency motion."). Rudnikas subsequently obtained counsel in this matter [D.E. 75, 79].

On June 5, 2020, the Court entered its Order Setting Civil Trial Date and Pretrial Schedule, Requiring Mediation, and Referring Certain Motion to Magistrate Judge (hereafter, "Scheduling Order") [D.E. 44]. Therein, the Court prescribed a deadline of 7-3-2020 for Rudnikas to amend his pleading. See Scheduling Order [D.E. 44 at 4].

On September 2, 2020, Plaintiff filed the Motion for TRO and Preliminary Injunction, the Motion to Amend, and the Motion to Admit Testimony [D.E. 54–56].

In the Motion for TRO and Preliminary Injunction, Rudnikas requests injunctive relief against NSU in connection with an unpled claim of ADA Retaliation against him. See Motion for TRO and Preliminary Injunction [D.E. 54]. That unpled claim of ADA retaliation relates to Rudnikas' suspension from NSU for violations of its Student Code of Conduct. Id. Specifically, Plaintiff requests the following injunctive relief:

> [E]ntry of a 14 day temporary restraining order & preliminary injunction requiring Defendant: 1) reinstate Plaintiff immediately with the classes he was registered for and waive any absences that occurred as a result of his dismissal and provide Plaintiff with opportunities to make up any work he missed as a result of the dismissal. 2) Remove the failing grade in Criminal Law so Plaintiff can receive financial aid and coordinate a time with Plaintiff to take the exam at some other time before graduation free of charge. 3) Grade Plaintiff on a pass/fail scale for the rest of these proceedings and provide Plaintiff with a carbon copy before and after each exam. 4) Obtain permission from this Court before taking any adverse action against Plaintiff until this Court deems otherwise.

Id. at 13.[2]

In the Motion to Amend, Rudnikas requests that the Court amend the 7-3-2020 deadline for amendment of pleadings so that he may file his "Proposed Verified Amended Complaint" [D.E. 55-1] and "Proposed Verified Supplemental Complaint" [D.E. 55-2]. See Motion to Amend [D.E. 55].

---

[2] Rudnikas claims that he was "dismissed from NSU," but the evidence set forth below demonstrates that he was suspended for a specified period of time.

In the Motion to Admit Testimony, Rudnikas requests that, in support of the Motion to Amend, the Court, "admit [six] depositions from prior actions [purportedly] involving the same subject matter, Defendant, and Plaintiff's predecessors in interest: *Hirsch v. Nova Se. Univ., Inc.*, 289 F. App'x 364 (11th Cir. 2008) . . . [and] *Redding v. Nova S.E. U., Inc.*, 165 F. Supp. 3d 1274 (S.D. Fla. 2016)." See Motion to Admit Testimony [D.E. 56].

In the Request for Judicial Notice, filed on March 5, 2021, Rudnikas requests that, in support of the Motion for TRO and Preliminary Injunction and the Motion to Amend, the Court take judicial notice of certain facts concerning Rudnikas' suspension from NSU for violations of its Student Code of Conduct. See Request for Judicial Notice [D.E. 109].

In the Motion to Invoke Judicial Estoppel, filed on March 9, 2021, Rudnikas requests that the Court "invoke the doctrine of judicial estoppel and deem Plaintiff the prevailing party as Defendant has admitted to liability in regard to all claims in the current operative complaint . . . ." See Motion for Judicial Estoppel [D.E. 110].

## **FACTUAL FINDINGS**

The following witnesses testified at the Evidentiary Hearing: Michele Struffolino ("Dean Struffolino"), NSU's Associate Dean of Students; Plaintiff; and Juan Pinillos ("Mr. Pinillos"), an IT security analyst at NSU. See Transcript of Evidentiary Hearing (hereafter, "Transcript") [D.E. 128]. Additionally, the following exhibits were admitted at the Evidentiary Hearing: Plaintiff's Exhibits 4, 5, & 17; and Defendant's Exhibits 1–6 & 10–16. Id. at 63–65; see also Exhibit and Witness List [D.E. 85, 120].

Defendant's Exhibits consist of the following documents:

- Exhibit 1 – Disciplinary Complaint [D.E. 85-1 at 1–23];

- Exhibit 2 – June 16, 2020 email from D. Vollweiler to B. Rudnikas re: Notice of Academic Complaint Under the Academic Disciplinary Process (hereafter, "June 16, 2020 Email")

[D.E. 85-1 at 24];

- Exhibit 3 - June 17, 2020 email from B. Rudnikas to D. Vollweiler and M. Struffolino re: Rudnikas v. Nova Southeastern, Inc. Case No: 19-cv-25148 (hereafter, "June 17, 2020 Email") [D.E. 85-1 at 25–26];

- Exhibit 4 - June 19, 2020 correspondence from M. Manley to B. Rudnikas re: Case Number 2020191601 (hereafter, "June 19, 2020 Letter") [D.E. 85-1 at 27–28];

- Exhibit 5 - June 19, 2020 email from M. Manley to B. Rudnikas re: Correspondence for Case (Benzo Rudnikas) (hereafter, "June 19, 2020 Email") [D.E. 85-1 at 29];

- Exhibit 6 - June 22, 2020 email from M. Manley to B. Rudnikas re: Judicial Conference (hereafter, "June 22, 2020 Email") [D.E. 85-1 at 30];

- Exhibit 10 - July 15, 2020 correspondence from M. Manley to B. Rudnikas re: Case Number: 202019601 (hereafter, "July 15, 2020 Letter") [D.E. 85-1 at 34–37];

- Exhibit 11 - July 15, 2020 email from M. Manley (via Maxient) to B. Rudnikas re: Correspondence for Case (Benzo Rudnikas) (hereafter, "First July 15, 2020 Email") [D.E. 85-1 at 38];

- Exhibit 12 - July 15, 2020 email from M. Manley (via Maxient) to B. Rudnikas re: Judicial Hearing Outcome (hereafter, "Second July 15, 2020 Email") [D.E. 85-1 at 39];

- Exhibit 13 - July 27, 2020 to August 4, 2020 email string from B. Rudnikas to R. Chenail, B. Williams, L. Acosta and P. Goldman re: Rudnikas v. Nova Southeastern University, Inc.; Case A#19-cv-25148 (hereafter, "Email Exchange") [D.E. 85-1 at 40–46];

- Exhibit 14 - August 7, 2020 correspondence from M. Manley to B. Rudnikas re: Case No. 202019601 (hereafter, "August 7, 2020 Letter") [D.E. 85-1 at 47];

- Exhibit 15 - August 7, 2020 email from M. Manley to B. Rudnikas re: Outcome Appeal - Update (hereafter, "August 7, 2020 Email") [D.E. 85-1 at 48]; and

- Exhibit 16 – Plaintiff's Proposed Verified Rule 15D Supplemental Complaint [D.E. 85-1 at 49–126].

See Exhibit and Witness List [D.E. 85].

### A.  Chronology of events derived from Exhibits:

1.      On June 10, 2020, Rudnikas published certain pictures (hereafter, "Pictures") from a confidential investigation report underlying an NSU disciplinary action against his classmate,

Corey Jacobs ("Jacobs"), in a WhatsApp group chat comprised of NSU law school classmates. See Def.'s Ex. 1, Disciplinary Complaint [D.E. 85-1 at 1–23].

2.      On June 11, 2020, and June 12, 2020, four of Rudnikas' classmates in that group chat (hereafter, "Complainants") reported Rudnikas' publication of the Pictures to Dean Struffolino.  Id.

3.      The four Complainants were upset by the publication of the Pictures because it revealed their involvement in NSU's disciplinary action against Jacobs.  Id.

4.      The investigation report was supposed to be confidential as "[t]he College of Law Disciplinary Process Rules provides that only the accused student receives this report."  Id. at 1.

5.      Dean Struffolino, who was involved in the investigation into Jacobs' conduct, had previously advised Jacobs and the Complainants that they were not to discuss the matter with others.  Id. at 2.

6.      The Complainants reported to Dean Struffolino that they believed Rudnikas' publication of the Pictures was "meant to discredit, embarrass, intimidate, harass, and retaliate against them for reporting . . .  Mr. Jacobs' prior behavior."  Id. at 2.

7.      Based on the Complainants' reports and her investigation into Rudnikas' conduct, Dean Struffolino filed the Disciplinary Complaint against Rudnikas for publishing the Pictures. Id. at 1–3.

8.      The Disciplinary Complaint charged Rudnikas with the following violations:

> ➢ NSU Conduct Violations (found in the NSU Student Handbook)
>   - Retaliation B 36
>   - Interference with University Investigations, Disciplinary Proceedings or Records B 25
>   - Harassment B 20
>   - Online/Internet Social Networking Usage b.30
>   - Complicity B 6

> ➢ College of Law Code of Academic Regulations
>   • Professionalism 10.1

Id. at 1.

9.     Dean Struffolino stated in the Disciplinary Complaint:

The sharing of the report, in the way it was shared, has damaged the credibility of
the College of Law administration and faculty.   Our Code of Academic
Regulations, similar to ethical rules governing attorneys, encourages law students
who witness rule violations and unprofessional behavior to report the behavior to
the administration.  The use of the report has damaged the integrity of the College
of Law process.

***

As the Associate Dean of Students, and as one who provided guidance and support
to all in the prior disciplinary process, I am shocked by this behavior.  This behavior
raises very serious questions regarding Mr. Jacobs' and Mr. Rudnikas' ability to
appropriately and professionally participate in the College of Law JD program. I
urge quick and serious sanctions be issued in order to prevent further harm to the
students, the College of Law, and the University.

Id. at 2–3.

10.     Dean Struffolino emailed Jacobs on June 11, 2020 and called him on June 12, 2020

to discuss the matter.  Id. at 3.  She received no response.  Id.  Rather, she received an email from

Rudnikas on June 15, 2020, "defending Mr. Jacobs' behavior and further attacking the witnesses

named in the report."  Id.; see also Pl.'s Ex. 5 (hereafter, "June 15, 2020 Email") [D.E. 120-1 at

18–21].

11.     On June 16, 2020, NSU Associate Dean Debra Moss Vollweiler ("Dean

Vollweiler") sent Rudnikas the following email advising him of the Disciplinary Complaint filed

against him:

A Complaint has been filed accusing you of violating the NSU Code of Student
Conduct and Academic Responsibility. Due to the current physical building
closure, this complaint will only be delivered electronically.

In accordance with the Academic Disciplinary Process (ADP) section 3.1.l, this
Complaint has been assigned to Dr. Michelle Manley, Assistant Dean for Student
Development for NSU to handle this matter under university procedures. Dr.

7

Manley will be contacting you soon to begin the process.

You are required to respond and cooperate with the investigation. You should consult the ADP and university handbook for rules regarding additional information about the process. Please read the rules carefully and in full. The Academic Disciplinary Process Rules as well as The NSU Code of Student Conduct and Academic Responsibility and The College of Law Supplemental Standards are available under "Student Policies" on the law school's website: https://www.law.nova.edu/currentstudents.studentservices.html.

If you need additional guidance on the process, please contact Assistant Dean Susan Landrum, copied on this email.

See Def.'s Ex. 2, June 16, 2020 Email [D.E. 85-1 at 24].

12.     Rudnikas responded to the June 16, 2020 Email as follows, in pertinent part:

My main detailed response will come in the form of a Rule 15d supplemental complaint before the July deadline.

***

Dean Struffulino: Respectfully, I don't think you're in a position to be saying that Cory and I should be sanctioned or that we're unprofessional when neither you nor Dean Vonweiller should be allowed to teach a class on professionalism considering the fact that you don't even have the professional judgment to know when you are violating the United States Criminal Code. . . .  If you're going to proceed with this investigation, I will be asking OCR to get involved or moving for a preliminary injunction to have you removed from your positions, I don't know which yet.

See Def.'s Ex. 3, June 17, 2020 Email [D.E. 85-1 at 25].

13.     On June 19, 2020, NSU's Assistant Dean for Student Development Dr. Michelle Manley (hereafter, "Dr. Manley"), sent Rudnikas an email with attached letter advising him of the Disciplinary Complaint filed against him; notifying him of the charges against him; and informing him of a judicial hearing that would be conducted into the matter.  See Def.'s Ex. 5, June 19, 2020 Email [D.E. 85-1 at 29]; Def.'s Ex. 4, June 19, 2020 Letter [85-1 at 27–28].  The June 19, 2020 Letter specifically stated:

The scheduled hearing with Dr. Michelle Manley, Assistant Dean for Student Development, must occur within seven (7) business days from the date of this letter. Please see the contact information below to schedule the conference. If you fail to schedule a hearing as required, it may result in a hold being placed on your record.

In addition, a hearing may still be scheduled by the conduct officer and you will be notified of the designated date and time.  If you do not appear for the scheduled hearing, the conduct officer can hold the hearing in abstentia.

If you have any questions. please do not hesitate to contact me at mmichell@nova.edu or (954) 262-7281.

See Def.'s Ex. 4, June 19, 2020 Letter [D.E. 85-1 at 28].

14.     On June 22, 2020, Dr. Manley sent Rudnikas a second email, providing him with another copy of the June 19, 2020 Letter and requesting that he contact her office to schedule a time to discuss the Disciplinary Complaint.  See Def.'s Ex. 6, June 22, 2020 Email [D.E. 85-1 at 30].

15.     Rudnikas did not respond to the June 19, 2020 Email or the June 22, 2020 Email. See Def.'s Ex. 10, July 15, 2020 Letter [D.E. 85-1 at 34-37].

16.     In the July 15, 2020 Letter, Dr. Manley stated that she had emailed Rudnikas again on July 10, 2020 "to give [him] yet another opportunity to coordinate a mutually agreeable date and time for [his] judicial hearing and indicated that if [he] failed to do so, the hearing would go forward July 15, 2020 at 9:00 a.m. with or without [his] participation, and that a determination would be made based on the information available." Id.  The July 15, 2020 Letter further stated that Rudnikas had not responded to the July 10, 2020 Email. Id.

17.     According to the July 15, 2020 Letter, Dr. Manley sent Rudnikas one final email "at 8:23 a.m. on the morning of July 15, 2020 reminding [him] that the judicial hearing would be going forward at 9:00 a.m." Id.  Rudnikas did not respond to that email or appear for his judicial hearing. Id.  Accordingly, the judicial hearing was conducted in his absence on July 15, 2020. Id.

18.     Later that day, Dr. Manley emailed Rudnikas the July 15, 2020 Letter detailing the outcome of the judicial hearing at which he did not appear. Id.; Def.'s Ex. 11, First July 15, 2020 Email [D.E. 85-1 at 38]; Def.'s Ex. 12, Second July 15, 2020 Email [D.E. 85-1 at 39].

19.     Dr. Manley reported the following finding in the July 15, 2020 Letter:

[Rudnikas'] behavior . . . was egregious and in blatant violation of university standards. Mr. Rudnikas' actions damaged the integrity of the College of Law Disciplinary practices and created a hostile environment for witnesses to a disciplinary proceeding. Subsequent behavior by Mr. Rudnikas indicates an absence of remorse and or understanding of the seriousness nature of said violations.

See Def.'s Ex. 10, July 15, 2020 Letter [D.E. 85-1 at 36].

20.     As a sanction for his conduct, Rudnikas was suspended, effective July 15, 2020 through April 30, 2021.  Id. Upon conclusion of his suspension, Rudnikas would have to request readmission to NSU and meet with Dr. Manley to demonstrate that he understood and was able to abide by NSU's Code of Conduct going forward.  Id.

21.     Rudnikas was permitted to and did appeal his suspension.  Id.; Def.'s Ex. 13, Email Exchange [D.E. 85-1 at 40–46].

22.     On August 7, 2020, Dr. Manley sent Rudnikas an email with attached letter reporting that his appeal had been denied by Dr. Brad Williams, Vice President of Student Affairs and Dean of Undergraduate Studies, and that his suspension was effective August 7, 2020 through April 30, 2021.   See Def.'s Ex. 13, Email Exchange [D.E. 85-1 at 40–46]; Def.'s Ex. 15, August 7, 2020 Email [D.E. 85-1 at 48]; Def.'s Ex. 14, August 7, 2020 Letter [D.E. 85-1 at 47].

**B.  Dean Struffolino's Testimony:**

23.     Dean Struffolino confirmed the filing of the Disciplinary Complaint against Rudnikas for his publication of the Pictures, as detailed above.

24.     Dean Struffolino also testified that neither she nor Dean Vollweiler had any influence over the outcome of Rudnikas' judicial hearing.

**C.  Rudnikas' Testimony:**

25.     Rudnikas testified that on June 10, 2020, during a "political" discussion in the law

school class WhatsApp group chat, he revealed the involvement of one of the Complainants in NSU's disciplinary action against Jacobs.  Rudnikas made this revelation after one of the Complainants made a comment in the group chat which upset him.

26.     Once Rudnikas had made that revelation, another of the Complainants made a comment in the group chat, which Rudnikas felt was insulting and humiliating to him.

27.     After those comments were made, Jacobs called Rudnikas to advise him that he wanted to publish the Pictures in the group chat.

28.     During that conversation with Rudnikas, Jacobs stated the he wasn't sure he should publish the Pictures because the NSU administration "could make a big deal out of it . . . ."  See Transcript [D.E. 128 at 25:25–26:10].

29.     Rudnikas then published in the group chat the Pictures, which Jacobs had provided to him, because: he felt that he had been humiliated in the group chat and what Complainants did to Jacobs "was morally wrong"; and he was accused of making false allegations relating to the Complainants' actions.  Id. at 26:11–27:3.

30.     On June 11, 2020, Jacobs advised Rudnikas that Dean Struffolino had called him to discuss, what he believed was, the publication of the Pictures.

31.     Rudikas received but did not respond to either the June 19, 2020 Email or the June 22, 2020 Email; and he did not contact anyone at NSU to schedule the judicial hearing until July 22, 2020.

32.     Rudnikas did not attend the July 15, 2020 judicial hearing because he did not have notice of it as he had been locked out of his NSU email account from July 10, 2020 through July 16, 2020 and, as a result, did not receive either of Dr. Manley's emails dated July 10, 2020 or July 15, 2020 informing him of the date of the judicial hearing.  Rudnikas claimed he received the

following error message when trying to log into his email account: "fix account or dismiss."  Id. at 10:16–22.

33.     Rudnikas had a Criminal Law final exam scheduled for August 3, 2020 through August 4, 2020.  However, he did not take the exam because he did not believe it was fair that he should be required to prepare for and take the exam while his appeal was pending.

### D. Mr. Pinillos' Testimony:

34.     Mr. Pinillos' limited testimony concerned his investigation of Rudnikas' claim that he was locked out of his NSU email account from July 10, 2020 through July 16, 2020.

35.     Mr. Pinillos' investigation revealed no evidence that Rudnikas was locked out of his NSU email account or that he sent any emails from his NSU email account during that time period.

36.     The error message Rudnikas claims to have received when trying to access his NSU email could have been easily resolved by following the error message's prompts.

37.     Mr. Pinillos was not aware of Rudnikas having contaced anyone at NSU or its IT department concerning difficulties accessing his NSU email account.

### DISCUSSION

### 1. Motion for TRO and Preliminary Injunction [D.E. 54]:

The standard for requesting a temporary restraining order and a preliminary injunction is the same.  See Perdomo v. HSBC Bank USA, No. 13-CV-22645, 2013 WL 12101097, at *1 (S.D. Fla. 2013) (quoting Morgan Stanley DW, Inc. v. Frisby, 163 F. Supp. 2d 1371, 1374 (N.D. Ga. 2001)).

"A district court has broad discretion in granting or denying a preliminary injunction." Ndimbie v. Broward Cty. Hous. Auth., No. 11-CV-60395, 2011 WL 13217296, at *1 (S.D. Fla. 2011) (citing Sierra Club v. Georgia Power Co., 180 F.3d 1309, 1310 (11th Cir. 1999)).  "A

preliminary injunction is typically prohibitive in nature and seeks simply to maintain the status

quo pending a resolution of the merits of the case."   Pritchard v. Fla. High Sch. Athletic Ass'n,

Inc., 371 F. Supp. 3d 1081, 1085 (M.D. Fla. 2019) (citing Haddad v. Arnold, 784 F. Supp. 2d 1284,

1295 (M.D. Fla. 2010)).  To obtain a preliminary injunction, the plaintiff must establish:

> (1) a substantial likelihood that Plaintiff will prevail on the merits of the
> underlying cause of action; (2) a substantial threat that Plaintiff will suffer
> irreparable injury if the injunction is not granted; (3) that the threatened injury
> to plaintiff outweighs the threatened harm the injunction may have on the
> defendant; and (4) that the public interest will not be adversely affected by
> granting the preliminary injunction.

Ndimbie, 2011 WL 13217296, at *1 (citing KH Outdoor, LLC v. City of Trussville, 458 F.3d

1261, 1268 (11th Cir. 2006)).  "In this Circuit, a preliminary injunction is an extraordinary and

drastic remedy not to be granted unless the movant clearly established the burden of persuasion as

to each of the four prerequisites."   Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000)

(alteration and internal quotation marks omitted) (citing United States v. Jefferson Cty., 720 F.2d

1511, 1519 (11th Cir. 1983)).  If the plaintiff is unable to show a substantial likelihood of success

on the merits, the remaining prerequisites need not be considered.  See Bloedorn v. Grube, 631

F.3d 1218, 1229 (11th Cir. 2011) (citing Pittman v. Cole, 267 F.3d 1269, 1292 (11th Cir. 2001));

see also Wreal, LLC v. Amazon.com, Inc., 840 F.3d 1244, 1248 (11th Cir. 2016) (Failure to meet

even one of the four prerequisites "dooms" a request for preliminary injunction) (citing Siegel,

234 F.3d at 1176)).

"When a preliminary injunction goes beyond the status quo and seeks to force one party to

act, it becomes a mandatory or affirmative injunction and the burden placed on the moving party

is increased."   K.G. ex rel. Garrido v. Dudek, 839 F. Supp. 2d 1254, 1260 (S.D. Fla. 2011) (quoting

Mercedes-Benz U.S. Int'l, Inc. v. Cobasys, LLC, 605 F. Supp. 2d 1189, 1196 (N.D. Ala. 2009)).

"A mandatory preliminary injunction is disfavored and should not be granted 'except in rare

instances in which the facts and law are clearly in favor of the moving party.'" Antoine v. Sch. Bd. of Collier Cty., Fla., No. 16-CV-37, 2017 WL 9674515, at *4 (M.D. Fla. 2017) (citing Martinez v. Mathews, 544 F.2d 1233, 1243 (5th Cir. 1976)).

"A district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit." Kaimowitz v. Orlando, Fla., 122 F.3d 41, 43 (11th Cir.), opinion amended on other grounds on reh'g, 131 F.3d 950 (11th Cir. 1997) (citing De Beers Consol. Mines v. U.S., 325 U.S. 212, 220 (1945); see also Torres Puello v. Guerrero Mendez, No. 20-CV-198, 2020 WL 4004481, at *2 (M.D. Fla. 2020) ("Like preliminary injunctions, temporary restraining orders are a tool appropriately used only to 'grant intermediate relief of the same character as that which may be granted finally.'") (quoting Kaimowitz, 122 F.3d at 43).

The issues identified in the Amended Complaint concern Rudnikas' allegations that NSU failed to adequately accommodate his ADHD diagnosis by failing to provide him with sufficient additional time to complete his assignments and exams. See Am. Compl. [D.E. 34]. The Motion for TRO and Preliminary Injunction, and the evidence adduced at the Evidentiary Hearing, concern Rudnikas' suspension from NSU for violations of its Code of Conduct. As noted above, the relief sought in the Motion for TRO and Preliminary Injunction is as follows:

> [E]ntry of a 14 day temporary restraining order & preliminary injunction requiring Defendant: 1) reinstate Plaintiff immediately with the classes he was registered for and waive any absences that occurred as a result of his dismissal and provide Plaintiff with opportunities to make up any work he missed as a result of the dismissal. 2) Remove the failing grade in Criminal Law so Plaintiff can receive financial aid and coordinate a time with Plaintiff to take the exam at some other time before graduation free of charge. 3) Grade Plaintiff on a pass/fail scale for the rest of these proceedings and provide Plaintiff with a carbon copy before and after each exam. 4) Obtain permission from this Court before taking any adverse action against Plaintiff until this Court deems otherwise.

See Motion for TRO and Preliminary Injunction [D.E. 54 at 13].  The difference in character between the issues in the Amended Complaint and the relief sought in the Motion for TRO and Preliminary Injunction is highlighted by the fact that Rudnikas bases the latter on an unpled ADA Retaliation claim against NSU resulting from his suspension for violations of its Student Code of Conduct.  Id. at 4–13.

Because the relief requested in the Motion for TRO and Preliminary Injunction "is not of the same character, and deals with a matter lying wholly outside the issues in the [Amended Complaint]," the undersigned recommends that it be denied.  Kaimowitz, 122 F.3d at 43.

For completeness, the undersigned also addresses the likelihood that Rudnikas will prevail on the merits of his unpled ADA Retaliation claim, which underlies the Motion for TRO and Preliminary Injunction.  See Motion for TRO and Preliminary Injunction [D.E. 54 at 4–13].

To establish a *prima facie* case of retaliation under the ADA, the plaintiff must prove the following: "(1) he participated in an activity that the ADA protects; (2) he suffered an adverse . . . action; and (3) there is a causal connection between the participation in the protected activity and the adverse . . . decision." Olmsted v. Defosset, 205 F. Supp. 2d 1316, 1320–21 (M.D. Fla. 2002) (citing Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000)).[3]

If the plaintiff is able to establish a *prima facie* case of retaliation under the ADA, "the burden then shifts to the defendant . . . to come forward with legitimate non-discriminatory reasons for its actions that negate the inference of retaliation."  Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997) (citing Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993)).  "If the defendant offers legitimate reasons for the . . . action, the

---

[3] ADA Retaliation claims are assessed under the same framework as retaliation claims made under Title VII.  See Hughes v. Wal-Mart Stores E., LP, No. 19-14863, 2021 WL 717164, at *3 (11th Cir. 2021) (citing Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1328 (11th Cir. 1998)).

plaintiff then bears the burden of proving by a preponderance of the evidence that the reasons offered by the defendant are pretextual." Goldsmith, 996 F.2d at 1163 (citing Donnellon v. Fruehauf Corp., 794 F.2d 598, 600 n.2 (11th Cir.1986)).

NSU argues that even assuming *arguendo* that Rudnikas "is able to demonstrate that he has established a prima facie case of retaliation, NSU has proffered a legitimate, nondiscriminatory reason for his suspension, being that Plaintiff engaged in behaviors toward other students that violated the NSU Code of Student Conduct." See Response to Motion for TRO and Preliminary Injunction [D.E. 67 at 11].

Rudnikas contends that NSU's justification for suspending him was a "pretextual ruse designed to mask retaliation[,] because the day prior to [NSU] initiating the sham code of conduct investigation[,]" he sent the June 15, 2020 Email which "brought to Defendant's attention very specific facts indicating that the students, who initially filed the complaint against Mr. Jacobs . . . made false allegations to the University which is by itself grounds for expulsion according to the student handbook . . . ." See Motion for TRO and Preliminary Injunction [D.E. 54 at 8–11].

Rudnikas' argument fails because the evidence at the Evidentiary Hearing establishes that the investigation into his publication of the Pictures commenced on June 11, 2020 and June 12, 2020, when the Complainants brought the matter to Dean Struffolino's attention—days before he sent the June 15, 2020 Email.

Rudnikas also argues in his Request for Judicial Notice that NSU's justification for suspending him was pretextual because Jacobs was also subject to disciplinary proceedings at NSU for his involvement in the publication of the Pictures but he received a lesser punishment than Rudnikas. See Request for Judicial Notice [D.E. 109 at 3–5, 8]; see also Feise v. N. Broward Hosp. Dist., 683 F. App'x 746, 751 (11th Cir. 2017) ("a plaintiff may demonstrate pretext either

16

by identifying a similarly situated comparator who was treated less harshly"); <u>Lewis v. City of Union City, Georgia</u>, 918 F.3d 1213, 1218 (11th Cir. 2019) (comparators must be "similarly situated in all material respects.").

This argument also fails because Jacobs and Rudnikas are not similarly situated in all material respects as Rudnikas, and not Jacobs, published the Pictures.

Moreover, because Rudnikas' requested relief, goes "beyond the status quo and seeks to force  [NSU] to act," his burden is increased and the Motion for TRO and Preliminary Injunction "should not be granted 'except in rare instances in which the facts and law are clearly in favor of the moving party.'" <u>Dudek</u>, 839 F. Supp. 2d at 1260; <u>Antoine</u>, 2017 WL 9674515, at *4. Here, Rudnikas has failed to demonstrate that the facts and law are clearly in his favor as he has failed to satisfy his burden of proving that the reasons offered by NSU for suspending him were pretextual. <u>Goldsmith</u>, 996 F.2d at 1163. Accordingly, the undersigned further finds that Rudnikas has failed to establish a substantial likelihood that he will prevail on the merits of his unpled ADA Retaliation claim. <u>Ndimbie</u>, 2011 WL 13217296, at *1. Therefore, the undersigned recommends that the Motion for TRO and Preliminary Injunction also be denied on this basis.

2. <u>**Motion to Amend [D.E. 55]**</u>:

Rudnikas requests that the Court amend its Scheduling Order to allow him to file his "Proposed Verified Amended Complaint" and "Proposed Verified Supplemental Complaint" beyond the Court's 7-3-2020 deadline for amendment of pleadings. <u>See</u> Motion to Amend [D.E. 55].

"[T]he Court of Appeals for the Eleventh Circuit has explained that, 'when a motion to amend is filed after a scheduling order deadline, Rule 16 [of the Federal Rules of Civil Procedure (hereafter, "Rule 16")] is the proper guide for determining whether a party's delay may be

excused.'" Aceituno v. Carnival Corp., No. 20-CV-23935, 2021 WL 1647890, at *2 (S.D. Fla. 2021) (quoting Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1418 n.2 (11th Cir. 1998)); see also Golden View Condo., Inc. v. QBE Ins. Corp., No. 11-CV-60137, 2011 WL 13112060, at *6 (S.D. Fla. 2011) (Jordan, J.) (explaining that a request to file a supplemental pleading pursuant to Rule 15(d) of the Federal Rules of Civil Procedure after "the deadline for submission of motions to amend the pleadings passed. . . . should be considered one to modify the pre-trial schedule under Rule 16(b)").

Rule 16(b)(4) provides that a court's "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." Aceituno, 2021 WL 1647890, at *2 (quoting Sosa, 133 F.3d at 1418); see also De Varona v. Disc. Auto Parts, LLC, 285 F.R.D. 671, 672–73 (S.D. Fla. 2012) ("diligence is the key to satisfying the good cause requirement.") (citing Sosa, 133 F.3d at 1419). "If either the facts necessary to formulate the claim were known prior to the deadline or the moving party failed to seek the information it needed to determine whether an amendment was required before the deadline passed, the moving party cannot establish the Rule 16(b) diligence necessary to show good cause." Beyel Bros., Inc. v. EMH, Inc., No. 19-CV-14392, 2020 WL 6143633, at *3 (S.D. Fla. 2020) (citing Southern Grouts & Mortars, Inc. v. 3M Co., 575 F.3d 1235, 1241–42 n.3 (11th Cir. 2009)). "If the party seeking relief 'was not diligent, the [good cause] inquiry should end.'" ConSeal Int'l Inc. v. Neogen Corp., No. 19-CV-61242, 2020 WL 2494596, at *3 (S.D. Fla. 2020) (alteration in original) (citing Sosa, 133 F.3d at 1418).

Rudnikas contends that he has satisfied Rule 16(b)'s good cause requirement "because he uncovered an unconscionable scheme that is dispositive of the entire case and basically shows

18

Defendant is not even entitled to discovery." <u>See</u> Motion to Amend [D.E. 55 at 26–27].   The evidence concerning the alleged "unconscionable scheme" was purportedly found in the six depositions cited in the Motion to Admit Testimony (hereafter, "Depositions").   <u>Id.</u> at 12–13. Rudnikas contends that his review of the Depositions allowed him to "connect[] the dots and realize[] there was a unconscionable scheme between Defendant, its Officer of the Court, and the Law Firm of Panza Maurer Maynard to defraud the public, the judicial system, and the Department of Education." <u>Id.</u> at 13.

Rudnikas' argument is meritless.   The Depositions were publicly available prior to the inception of this case. <u>See</u> <u>Hirsch v. NSU</u>, 04-CV-60068-JEM (S.D. Fla. 2004) [D.E. 24, 25, 27] (filed on June 14, 2004); <u>Redding v. NSU</u>, 14-CV-60545-KAM (S.D. Fla. 2015) [D.E. 66, 79-1] (filed on May 20, 2015 and July 6, 2015, respectively].   Moreover, Plaintiff was aware of the <u>Hirsch</u> and <u>Redding</u> cases "[a] couple of days after" his civil procedure final exam, which took place on April 28, 2020. <u>See</u> Proposed Verified Supplemental Complaint [D.E. 55-2 at 27–28]. Rudnikas' failure to review the Depositions prior to the Court's 7-3-2020 deadline does not establish the Rule 16(b) diligence necessary to show good cause and does not justify his filing of the Motion to Amend on September 2, 2020. <u>See</u> <u>Beyel Bros., Inc.</u>, 2020 WL 6143633, at *3 ("Mere 'carelessness is not compatible with a finding of diligence.'") (quoting <u>Will–Burn Recording & Pub. Co. v. Universal Music Group Records</u>, No. 08–CV-0387, 2009 WL 1118944, at *3 (S.D. Ala. 2009)).

Accordingly, the undersigned recommends that the Motion to Amend be denied.[4]

---

[4] In the Motion to Amend, Rudnikas also requests that the Court: sanction and enter a default judgment against NSU for fraud on the Court; disqualify NSU's counsel and refer them to the Florida Bar; and stay discovery in this action pending a ruling on the request for default judgment. <u>See</u> Motion to Amend [D.E. 55].   At the Evidentiary Hearing, counsel for Rudnikas withdrew the request to disqualify NSU's counsel and refer them to the Florida Bar. <u>See</u> Transcript [D.E. 128 at 71–72].   Counsel for Rudnikas also represented that the request for sanctions and for default judgment and the request for stay of discovery

**3.   <u>Motion to Admit Testimony [D.E. 56]</u>:**

As noted above, Rudnikas requests that the Court admit the Depositions in support of the Motion to Amend. <u>See</u> Motion to Admit Testimony [D.E. 56].   In light of the undersigned's recommendation that the Motion to Amend be denied, the undersigned recommends that the Motion to Admit be similarly denied.

**4.   <u>Request for Judicial Notice [D.E. 109]</u>:**

Rudnikas requests that, in support of both the Motion for TRO and Preliminary Injunction and the Motion to Amend, the Court take judicial notice of purported facts concerning: NSU's disciplinary proceedings against Jacobs for his involvement in Rudnikas' publication of the Photographs; NSU's disciplinary proceedings against Rudnikas for his publication of the Photographs; and Jacobs' lesser punishment than Rudnikas for his role in the incident.  <u>See</u> Request for Judicial Notice [D.E. 109].   Rudnikas requests that the Court take judicial notice of these purported facts for the purpose of establishing Jacobs as a similarly situated comparator and to demonstrate that his suspension was an act of retaliation in support of his unpled ADA Retaliation claim.  <u>Id.</u> at 3–4, 8.

The Court has the discretion to refuse to take judicial notice of facts which are not relevant to the issues of a case.  <u>See</u> <u>United States v. Alindor</u>, 799 F. App'x 678, 684–85 (11th Cir. 2020) ("The district court was within its discretion to refuse to take judicial notice of facts that are not relevant to the issues in the case.") (citing Fed. R. Evid. 402) ("Irrelevant evidence is not admissible.").   Rule 401 of the Federal Rules of Evidence provides that evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence;

were contingent on the Court's ruling on his request to amend the Court's 7-3-2020 deadline to further amend the complaint.  <u>Id.</u> at 69–71.  In recommending that the Motion to Amend be denied, the undersigned further recommends that the request for entry of a default judgment against NSU for fraud on the Court be denied as baseless; and that the request for stay of discovery be denied as moot.

and (b) the fact is of consequence in determining the action."  Id.

Here, the facts surrounding the publishing of the Pictures and the disciplinary proceedings resulting therefrom are not probative of the claims in Rudnikas' current pleading, namely the Amended Complaint.  Based on this lack of relevance as to the current pleading and the undersigned's recommendation that the Motion to Amend be denied, the undersigned recommends that the Request for Judicial Notice be denied.

5. **Motion to Invoke Judicial Estoppel [D.E. 110]:**

Rudnikas requests that the Court "invoke the doctrine of judicial estoppel and deem Plaintiff the prevailing party as Defendant has admitted to liability in regard to all claims in the current operative complaint."  See Motion to Invoke Judicial Estoppel [D.E. 110 at 1].  Rudnikas argues that "[t]o permit Defendant to continue litigating would require Defendant to change its current position and to knowingly submit false and/or inaccurate testimony that would allege facts that occurred prior to litigation, but which Defendant, Plaintiff, and this Court would know are false because of Defendant's admissions . . . that it had no facts to support its affirmative defenses prior to litigation, prior to discovery."  Id. at 9–10.

"Judicial estoppel is an equitable doctrine invoked at a court's discretion, designed to protect the integrity of the judicial process."  Transamerica Leasing, Inc. v. Inst. of London Underwriters, 430 F.3d 1326, 1335 (11th Cir. 2005) (citing New Hampshire v. Maine, 532 U.S. 742, 749–50 (2001)).  "The doctrine of judicial estoppel applies when 'a party assumes a certain position in a legal proceeding, and then succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'"  Matter of Brizo, LLC, 437 F. Supp. 3d 1212, 1220 (S.D. Fla. 2020) (quoting New Hampshire v. Maine,

532 U.S. 742, 749 (2001)).  "The purpose of judicial estoppel is to prevent a party from using an argument in one phase of a case and then relying upon a contradictory argument to prevail in another phase."  <u>Matter of Brizo, LLC</u>, 437 F. Supp. 3d at 1220 (citing <u>Pegram v. Herdrich</u>, 530 U.S. 211, 227 n.8 (2000)).

Rudnikas does not contend that NSU assumed a certain position in a legal proceeding, succeeded in maintaining that position, and now assumes a contrary position because its interests have changed, which are conditions precedent to the Court's invocation of the equitable doctrine of judicial estoppel.  <u>Matter of Brizo, LLC</u>, 437 F. Supp. 3d at 1220.

Therefore, the undersigned recommends that the Motion to Invoke Judicial Estoppel be denied.

## **RECOMMENDATION**

Based on the foregoing considerations, the undersigned **RESPECTFULLY RECOMMENDS** that the Motions [D.E. 54–56, 109, and 110] be **DENIED**.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have <u>**fourteen** days</u> from the date of this Report and Recommendation to file written objections, if any, with the Honorable Jose E. Martinez.  Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein.  <u>See</u> <u>Resolution Tr. Corp. v. Hallmark Builders, Inc.</u>, 996 F.2d 1144, 1149 (11th Cir. 1993).  Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  <u>See</u> 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida, this 2nd day of June, 2021.

_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc:    United States District Judge Jose E. Martinez
        Counsel of Record